**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 05-1021-LRR |
| vs. | |
| MICHAEL THOMAS GATENA and CARLA GRACE ENGLER, | ORDER |
| Defendants. | |

_____

**TABLE OF CONTENTS**

*I.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*III.* *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   *A.*   *Factual Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   *B.*   *Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      *1.*   *Inventory search of Engler's truck* . . . . . . . . . . . . . . . . . . 7

      *2.*   *Probable cause to search Engler's truck* . . . . . . . . . . . . . . 9

      *3.*   *Probable cause to search Engler's purse* . . . . . . . . . . . . . 10

*IV.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The matters before the court are Carla Grace Engler's Motion to Suppress (docket no. 46), Michael Thomas Gatena's Notice to Adopt Attorney Swift's Motion to Suppress (docket no. 50), Chief Magistrate Judge John A. Jarvey's Report and Recommendation

(docket no. 83) and Carla Grace Engler's Objection to the Report and Recommendation (docket no. 109). In her October 6, 2005 Objection to the Report and Recommendation, Engler specifically objects to the September 22, 2005 Report and Recommendation which recommends that the August 23, 2005 Motion to Suppress filed by Engler and Gatena be denied with respect to the warrantless searches.

## I. PROCEDURAL BACKGROUND

On July 14, 2005, Gatena and Engler were charged in a five-count Superseding Indictment. Count 1 charges Gatena and Engler under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 860(a) with conspiring to manufacture 50 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, within 1,000 feet of the real property comprising a school, that is Holy Ghost Catholic Grade School in Dubuque, Iowa, between about 2004 and 2005. Count 2 charges Gatena under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846 with manufacturing and attempting to manufacture 5 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, on or about November 17 and 18, 2004. Count 3 charges Gatena under 21 U.S.C. § 841(c)(2) with possession of red phosphorus, a List I chemical, knowing and having reasonable cause to believe that the red phosphorus would be used to manufacture methamphetamine, a Schedule II controlled substance, on or about November 17 and 18, 2004. Count 4 charges Engler under 21 U.S.C. § 841(c)(2) with possession of red phosphorus, a List I chemical, knowing and having reasonable cause to believe that the red phosphorus would be used to manufacture methamphetamine, a Schedule II controlled substance, on or about January 30, 2005. Count 5 charges Gatena and Engler under 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846 with attempting to manufacture and aid and abet the attempted manufacture of 5 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, within 1,000 feet of the real

2

property comprising a school, that is Holy Ghost Catholic Grade School in Dubuque, Iowa, on or about June 4 and 5, 2005.

On August 23, 2005, Engler filed a Motion to Suppress (the "Motion"). On August 25, 2005, Gatena joined Engler's Motion by filing his Notice to Adopt Attorney Swift's Motion to Suppress. In the Motion, Gatena and Engler seek to suppress items found pursuant to warranted and warrantless searches. There were three search warrants executed in this case: November 18, 2004, December 30, 2004 and June 5, 2005. There were also three warrantless searches which took place in Dubuque on December 30, 2004, January 30, 2005 and June 5, 2005. Namely, Defendants seek to suppress the items that are associated with the manufacture of methamphetamine which were found during the warrantless searches. On August 30, 2005, the government filed a Resistance to the Motion to Suppress.

On September 7, 2005, Judge Jarvey filed a Report and Recommendation in which he reserved ruling on the warrantless searches and recommended the denial of the Motion as it pertained to the warranted searches. On September 19, 2005, Engler filed an Objection to the September 7, 2005 Report and Recommendation concerning the warranted searches. Gatena did not file objections.

On September 15, 2005, Judge Jarvey held a hearing ("Hearing") on the warrantless searches raised in the Motion. Engler was personally present and represented by counsel Stephen Swift. Gatena was personally present and represented by counsel Frank Santiago. Assistant United States Attorney Dan Tvedt represented the government. On September 22, 2005, Judge Jarvey filed a Report and Recommendation which addressed the warrantless searches and recommended the Motion be denied. On October 6, 2005, Engler filed her Objection to the Report and Recommendation. Gatena did not file objections to this second Report and Recommendation.

3

On October 13, 2005, the court partially denied the Motion and the Notice to Adopt Attorney Swift's Motion to Suppress. The court also reserved ruling with respect to the warrantless searches. With respect to the warrantless searches, the court finds the matter to be fully submitted and ready for decision.

## II. STANDARD OF REVIEW

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1)(C); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (stating that 28 U.S.C. § 636(b)(1) requires a court to conduct a *de novo* review); *cf.* Fed. R. Civ. P. 72(b) (provides for review of a magistrate judge's recommendation on dispositive motions and prisoner petitions). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (same). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Therefore, portions of the proposed findings or recommendations to which no objections were filed are reviewed only for "plain error." *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir.

1994) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

### III. ANALYSIS

The court notes that Gatena neither resisted nor filed objections to Judge Jarvey's conclusions regarding the searches conducted on December 30, 2004, January 30, 2005 and June 5, 2005. Finding no objections to, and no plain error in, his conclusions, the court shall accept the portions of Judge Jarvey's report and recommendation pertaining to them. Similarly, Engler does not object to the findings in the Report and Recommendation regarding the December 30, 2004 search or the June 5, 2005 search. Because no objections pertaining to the December and June searches have been filed, there is no ground to reject or modify the portions of the Report and Recommendation which address those searches. Engler, however, made specific, timely objections to Judge Jarvey's Report and Recommendation which found that the January 30, 2005 search of her truck and purse was permissible because it was either an inventory search or based on probable cause. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required.

#### A. Factual Findings

After a *de novo* review, the court finds the following facts:

On January 30, 2005, Officer Kane of the Dubuque Police Department responded to a call informing law enforcement officers that Engler had been in a Walgreen's and purchased numerous boxes of matches. While en route to the Walgreen's, Officers Slight and Welsh advised Officer Kane that Engler was driving a truck, which was registered to Gatena, and that the truck stopped at Beecher's, a gas station/liquor store. When Officer Kane arrived at Beecher's, Officers Slight and Welsh were with Engler outside of the store. Knowing that Engler's license had either been suspended or revoked, Officer Slight

asked Engler why she was driving. Engler stated that she had only driven from tanning but acknowledged that her license had been either suspended or revoked. After confirming with the police department that Engler's license had either been suspended or revoked, Officer Kane transported her to the police station.

Pursuant to Engler's arrest, Officers Slight and Welsh called for the assistance of Officer Roy and Iwan, who is Officer Roy's canine partner and has worked with Officer Roy since 2001. Iwan is certified to search for methamphetamine, cocaine, heroine and marijuana and is re-certified at least once each year to detect those four narcotics odors. Iwan is trained as a passive indicator dog and will sit only when he detects the presence of those substances.

Officer Roy allowed Iwan to walk around the exterior of Engler's truck. Iwan sat next to the truck, which indicated that he identified the scent of contraband. Officers then allowed Iwan to enter the truck. Based on Iwan's indication outside the truck, officers searched inside the truck and found several boxes of matchbooks.

At some point, either inside or outside of the truck, Iwan also alerted officers to the presence of contraband in Engler's purse. When he searched the purse, Officer Roy found plastic straws, which were later determined to contain trace amounts of methamphetamine.

Based on the private parking lot owner's request to have Engler's truck moved, officers conducted an inventory search of it. Officer Kane testified that the Dubuque Police Department has a policy for inventorying the contents of a vehicle before it is towed from private property at a property owner's request. Officers Slight and Welsh filled out the Dubuque Police Department Impounded Vehicle Report and had the truck towed from Beecher's parking lot. Officers inventoried the following items: garbage, an alarm clock, a flashlight, a tape measure, cases of Pepsi and a tow hitch.

6

### B. *Objections*

The government concedes no warrant existed when police searched Engler's vehicle and purse. Generally, warrantless searches are *per se* unreasonable under the Fourth Amendment. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). In order for the government to introduce evidence obtained during a warrantless search, it bears the burden of showing: (1) there is an applicable exception to the warrant requirement and (2) the government's conduct fell within the bounds of the applicable exception. *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993). Engler asserts that the search of her vehicle and/or purse was not permissible under the inventory search exception to the warrant requirement, under a probable cause determination or pursuant to a search incident to arrest.

#### 1. *Inventory search of Engler's truck*

Engler contends that the government failed to prove that an inventory search of Engler's vehicle was properly conducted because (1) there was no testimony from a Beecher's employee or owner regarding a request to move Engler's vehicle and (2) the government failed to present the Dubuque Police Department policy regarding inventory searches and to show compliance with that policy. Based on the testimony presented at the Hearing, the court overrules Engler's objection to Judge Jarvey's finding that officers properly conducted an inventory search of her truck.

One of the exceptions to the warrantless search prohibition is the reasonable inventory search. *S. Dakota v. Opperman*, 428 U.S. 364, 376 (1976). In *Marshall*, the Eighth Circuit Court of Appeals held that inventory searches conducted pursuant to "standardized police procedure" are not constitutionally unreasonable. *Marshall*, 986 F.2d at 1174  A standardized inventory search is a routine, non-criminal "'administrative caretaking function[], particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations.'" *Colorado v. Bertine*, 479 U.S. 367, 371

7

(1987) (quoting *Opperman*, 428 U.S. at 370 n.5). Requiring inventory searches to be in compliance with standard police policies lessens the potential that such searches are investigatory in nature. *Marshall*, 986 F.2d at 1174. An inventory search before the towing of a vehicle assures that an owner's property is protected, police departments are protected from false claims of damage to a vehicle and officers are protected from potential danger. *United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001) (citing *Bertine*, 479 U.S. at 372).

Officer Kane testified that the Dubuque Police Department has a written inventory policy for towing a vehicle from private property. He explained that, in the event of a request to tow a vehicle from private property, officers make a written list of the contents found in the vehicle. Although the actual policy was not presented during the hearing, testimony from an officer regarding a police department policy is sufficient evidence that such policy exists. *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004) (citing *United States v. Lowe*, 9 F.3d 43, 46 (8th Cir. 1993)). Officers Slight and Welsh completed a Dubuque Police Department Impounded Vehicle Receipt for Engler's truck, noting that the truck was being "towed from private lot at request of business owner." (Government's Exhibit 4). Officers listed in detail what was found in the truck. The fact the inventory sheet that Officers Slight and Welsh completed included just the lawful contents of the car buttresses the conclusion that the officers merely inventoried the truck and were not solely rummaging for contraband. *Cf. United States v. Rowland*, 341 F.3d 774, 781 (8th Cir. 2003) (noting officer's failure to record lawful property as well as unlawful property "illustrate[d] the inventory search was pretextual"), *cert. denied*, 540 U.S. 1093 (2003). The government provided sufficient evidence that (1) the Dubuque Police Department had a policy of conducting inventory searches on vehicles before towing them from private property and (2) Officers Slight and Welsh followed that policy on

8

January 30, 2005. The court finds that the Dubuque Police Department had an inventory policy in place and that the policy was followed. Accordingly, the inventory search of Engler's truck was lawful, and Engler's objection is overruled.

### 2. *Probable cause to search Engler's truck*

The search of Engler's truck was also a permissible exception to the warrant requirement because it was based on probable cause. In the Report and Recommendation, Judge Jarvey determined that, based on the drug dog's alerting to the possible presence of contraband, the officers had probable cause to search Engler's truck. Engler contends that this determination is improper.

Judge Jarvey's conclusion is correct because "[a] dog sniff is not a search within the meaning of the Fourth Amendment, and thus requires no probable cause to be performed." *United States v. Sanchez*, 417 F.3d 971, 976 (8th Cir. 2005) (citing *Illinois v. Cabelles*, 125 S. Ct. 834 (2005)). Officers need not "have a reasonable suspicion that a vehicle was transporting contraband before subjecting it to a canine sniff." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). Once a dog indicates that a vehicle contains drugs, officers have probable cause to believe that drugs are present and may search the vehicle. *Id.* (citing *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994)).

Officer Roy testified that Iwan, his canine partner, sniffed the exterior of Engler's truck. Iwan sat, which indicated that he detected drugs. Officer Kane explained that Iwan is trained to sit only upon detecting contraband. At this point, there was probable cause to search Engler's truck. *See id.* Officer Roy then allowed Iwan to enter the passenger compartment of the truck. Based on Iwan's indication, officers had probable cause to believe that the truck contained illegal drugs and, therefore, the search of the truck was permissible. Engler's objection is overruled.

9

### *3. Probable cause to search Engler's purse*

Engler alleges the $532 and the straws containing trace amounts of methamphetamine that were found in her purse should be suppressed because the purse was not located in the truck during the drug dog sniff and could not otherwise be searched without a warrant. Evidence presented by the government during the Hearing was conflicting. In response to various questions, Officer Roy testified that Engler's purse was in one of three locations: (1) in the truck, (2) on the ground or (3) in Officer Slight's possession. Officer Roy was uncertain about the location of Engler's purse and no other testimony was presented by the government to clarify the matter. Any determination on the suppression of the items found in the purse would hinge on the purse's location and when the purse was searched. Without more information about the circumstances surrounding the search of Engler's purse, the court cannot determine whether the search was permissible. As previously stated, it is the government's burden to prove that a warrantless search fit into one of the delineated exceptions to the warrant requirement. *United States v. Kelly*, 547 F.2d 82, 84 (8th Cir. 1977) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971)); *see also Marshall*, 986 F.2d at 1173 (stating that, where a warrantless search is conducted, the government bears the burden to show: (1) there is an applicable exception to the warrant requirement and (2) the government's conduct fell within the bounds of the applicable exception). The government failed to meet that burden. The drug paraphernalia and the $532 found in Engler's purse are, therefore, suppressed.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) The court **OVERRULES,** in part, and **GRANTS**, in part, Defendant Carla Grace Engler's Objections to Report and Recommendation (docket no. 109).

(2) The court **DENIES**, in part, and **GRANTS,** in part, Carla Grace Engler's Motion to Suppress (docket no. 46) and Michael Thomas Gatena's Notice to Adopt Attorney Swift's Motion to Suppress (docket no. 50). The clerk of court is directed to satisfy both motions at this time.

(3) The court **ADOPTS**, in part, and **MODIFIES**, in part, Chief Magistrate Judge John A. Jarvey's Report and Recommendation of September 7, 2005 (docket no. 83).

(4) The period between the filing of Engler's Objections and the filing of this Order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**SO ORDERED.**

**DATED** this 18th day of October, 2005.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA